BOWES, Judge.
Plaintiff Laurence Conrad (hereinafter Conrad) appeals a judgment of the district court in favor of defendants, granting summary judgment and dismissing his case with prejudice. We reverse.
Conrad was injured in November of 1982 and, one week later, retained the legal services of R. Glenn Cater to litigate his Jones Act claim against Odeco, Inc. That contract, dated November 30, 1982, held in pertinent part that Conrad agreed to pay attorney’s fees of one-third of any amount recovered without the necessity of filing a lawsuit, to pay forty per cent of any amount recovered if suit is filed or the case tried, to have deducted the amount of all unpaid medical and other connected bills, and that counsel would pay any costs or expenses not awarded by the court or added to a settlement. In December of 1982, suit was filed on behalf of Conrad against Odeco. In January, 1984, Conrad alleges that Cater arranged a loan in the amount of $30,000 on behalf of Conrad, but deposited the proceeds into his (Cater’s) account; Cater was to disburse the funds to Conrad to provide living expenses. Conrad further alleged that these disbursements were made at Cater’s discretion, irregularly, and with checks often drawn on insufficient funds, so that, in August of 1984, Conrad sought new counsel. New counsel, William Guste, III, and Joseph Landry submitted motions to substitute counsel to Cater, which Conrad alleges Cater “strenuously” refused to sign. In his affidavit in opposition to the motion for summary judgment, Conrad stated:
“Mr. Guste had agreed to take my case only if Mr. Cater would agree to the change, and after three weeks declined to handle my case; hence, I returned to Cater since he was also refusing to give me the remainder of my $30,000 loan.”
On September 10, 1984, a new contract was entered into between Conrad and Cater, which provided for attorney’s fees of one-third of any amount recovered, expenses being the responsibility of Conrad, and, additionally, that all costs and out-of-pocket expenses were to be deducted from the proceeds of any sum recovered. In signing this contract, Conrad signed copies of ledger sheets, acknowledging that all *679 costs reflected thereon had been incurred in pursuit of the lawsuit or had been advanced to him to provide for his necessities. In his petition in the present lawsuit, Conrad alleged:
“Because of plaintiff’s dire financial circumstances, he had no choice but to sign said contract as Cater would not disburse further funds from said $30,000 loan unless and until Conrad agreed to the new contract.”
In December of 1984, plaintiffs Jones Act lawsuit was tried before a jury, which subsequently resulted in a verdict of $530,-000.00, plus legal interests and costs; for reasons not clear to this court, that verdict was reduced to $480,000, plus costs and interest, by the trial judge in that case. After rendition of the judgment, various negotiations were had between the parties regarding settlement. As of February 13, 1985, a document authorizing settlement was signed by Conrad alone. That letter generally discussed terms of a possible settlement, and Conrad added in the following handwritten paragraph:
“If this case is not settled for Five hundred ten thousand ($510,000.00) within ten days of February 14, 1985, this authority is void unless extended by both parties. If this case is not settled for Five hundred ten thousand ($510,000.00) within ten days then any settlement, including any court costs fixed by the court will be governed by the original contract between Lawrence [sic] Conrad and Cater & Willis.”
On April 29, 1985, Conrad signed a “Certificate of Satisfaction”, which stated that the judgment had been paid in full. On the same date, Conrad signed a disbursement statement which read:
DISBURSEMENT STATEMENT
Gross Settlement $512,500.00
Attorneys’ fees at one-third 170,833.33
Expenses and advances (see ledger sheets attached) 104,665.19
DISBURSEMENT STATEMENT
Unadjusted recovery $237,001.48
7 days interest $ 12% 544.57
Total Due Client $237,546.05
Received of Cater & Willis funds in the amount of $237,546.05 made payable to Laurence Conrad in full and final settlement of the above claim. I express my satisfaction in the management of my claims. I fully relieve and release my attorneys, Cater & Willis, R. Glenn Cater and Phillip T. Hager (A Professional Law Corporation) from any further financial or professional liability.
Date: 4-29
/s/Laurence Conrad
Laurence Conrad
Cater did not sign the disbursement statement.[1] In its reasons for judgment, the trial court found that this disbursement statement governs as the final contract between the parties, finding that its terms were very clear as to how the settlement would be divided. We find that this was error and that the disbursement statement, rather than being the final contract, merely reflected the terms of the September 10, 1984 contract and disbursed the proceeds of the judgment accordingly. Further, the trial court erroneously found that the circumstances alleged by Conrad did not:
"come(s) near the Codal definition of duress. The Court thinks that Mr. Conrad voluntarily chose Cater to be his attorney for the first and second time around. Mr. Conrad did not have to go back to Mr. Cater. He could have hired another attorney. The Court does not believe that Mr. Cater would refuse to withdraw as Mr. Conrad’s attorney.”
LSA-C.C. art. 1959 discusses consent vitiated by duress:
Art. 1959. Nature
Consent is vitiated when it has been obtained by duress of such a nature as to cause a reasonable fear of unjust and considerable injury to a party’s person, property, or reputation.
Age, health, disposition, and other personal circumstances of a party must be *680 taken into account in determining reasonableness of the fear.
In Standard Coffee Service Co. v. Babin, 472 So.2d 124 (La.App. 5 Cir.1985), a panel of this court discussed economic duress in regard to vitiated consent (the applicable codal articles at that time were 1850 and 1851, now the above-cited article 1959). There, we held that an examination of the subjective characteristics of Babin was required in order to determine whether consent was vitiated, and then consider whether other reasonable persons with the same subjective characteristics would have felt forced into signing the contract. We determined that a reasonable person faced with being deprived of economic security was vulnerable and in an unfair bargaining position, and affirmed the finding of the trial court that the defendant Babin had been coerced into signing. Plaintiff in the present case alleges economic coercion in the above-quoted allegation of his petition regarding the $30,000 loan, as well as in his assertion that Cater refused to withdraw from the case (thereby making it difficult or impossible for the case to proceed with new counsel).
In reaching its conclusion, the trial court here impermissibly made findings of fact. Watson v. Cook, 427 So.2d 1312 (La.App. 2 Cir.1983) neatly sums up the applicable jurisprudence regarding summary judgments:
A motion for summary judgment should be granted if, and only if, the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. Thornhill v. Black, Sivals, & Bryson, Inc., 394 So.2d 1189 (La.1981); Urban Management Corp. v. Ellis L. Burns, Jr., et al., 427 So.2d 1310 (La.App. 2d Cir.1983); La.C.C.P. Art. 966. The movant for the summary judgment has the burden of affirmatively showing the absence of a genuine issue of material fact and any doubt as to the existence of such issue of material fact is to be resolved against granting the motion. White v. Baker Manor Nursing Home, Inc., 400 So.2d 1168 (La.App. 1st Cir.1981). To satisfy his burden, the party moving for the summary judgment must meet a strict standard by showing that it is quite clear as to what the truth is, and that excludes any real doubt as to the existence of material fact. Vermilion Corp. v. Vaughn, 397 So.2d 490 (La.1981). The papers supporting the position of the party moving for the summary judgment are to be closely scrutinized while the opposing papers are to be indulgently treated, in determining whether mover has satisfied his burden. Vermilion Corp. v. Vaughn, supra. Where the trial court is presented with a choice of reasonable inferences to be drawn from subsidiary facts contained in affidavits and attached exhibits, reasonable inferences must be viewed in the light most favorable to the party opposing the motion. Duvalle v. Lake Kenilworth, Inc., 396 So.2d 1268 (La.1981). No summary judgment will be granted even if the trial court has grave doubts regarding a party’s ability to establish disputed facts. Aydell v. Charles Carter & Co., Inc., 388 So.2d 404 (La.App. 1st Cir.1980). It is not the function of the trial court on a motion for summary judgment to determine' or even inquire into the merits of the issues raised. Morris v. Louisiana Coca Cola Bottling Co., Ltd., 354 So.2d 659 (La.App. 1st Cir.1977). The weighing of conflicting evidence on a material fact has no place in summary judgment procedure. Mecom v. Mobil Oil Corp., 299 So.2d 380 (La.App. 3d Cir.1974). A motion for summary judgment is not appropriate for disposition of cases requiring a judicial determination of subjective facts, e.g., motive, intent, good faith,■ knowledge. See Jefferson Parish School Bd. v. Rowley Company, Inc., 305 So.2d 658 (La.App. 4th Cir.1974); Butler v. Travelers Ins. Co., 233 So.2d 271 (La.App. 1st Cir.1970). Testimony should neither be received nor considered, even with the consent of counsel, to decide a motion for summary judgment. Urban Management Corp. *681 v. Ellis L. Burns, Jr., et al., supra; Hemphill v. Strain, 341 So.2d 1186 (La.App. 1st Cir.1976). Making evaluations of credibility has no place in determining a summary judgment. Dixie Buick, Inc. v. Lockett, 263 So.2d 56 (La.App. 4th Cir.1972); Hemphill v. Strain, supra. [Emphasis Supplied]
In this case, the trial court made a credibility determination in finding that it did not believe Mr. Cater would refuse to withdraw. The Court further made a factual finding that Mr. Conrad voluntarily chose to hire Mr. Cater the second time (despite Conrad’s assertions to the contrary) due in part to its legal error that Mr. Conrad’s claims did not constitute duress. Standard Coffee, supra. The serious allegations made by Conrad, if proven, could very well constitute duress sufficient to vitiate the consent to the second contract. (Defendant has quoted in brief an affidavit from Joseph Landry relative to that attorney’s refusal to represent Conrad; however, this affidavit does not appear in the record before us. Moreover, it is not dispositive of all of the issues before us.) The credibility determination of the trial court, as well as its factual findings, violate the summary judgment procedure and are, instead, the functions of the court at a trial on the merits.
The resolution of questions of material issues of fact necessarily involves the making of credibility evaluations and the weighing of conflicting evidence. A trial judge should not treat a motion for summary judgment as an opportunity to resolve and decide factual issues rather than as a procedural device to determine whether or not genuine issues of fact exist as evidenced by pleadings, affidavits, depositions, and admissions on file. Wilkinson v. Husser, 154 So.2d 490 (La.App. 1st Cir.1963). [Emphasis supplied] Watson, supra
The present case also does not lend itself to summary judgment inasmuch as it appears to necessitate a determination of the subjective characteristics of Conrad to ascertain whether or not his consent was vitiated. Standard Coffee, supra.
Finally, as the court stated in Watson, supra:
Furthermore, our review of the jurisprudence leads us to conclude that any dispute relative to an attorney client relationship, including the enforcement of the contracts sought to be enforced in the instant proceeding, is subject to the close scrutiny of the courts and is to be resolved under the provisions of the Code of Professional Responsibility. See Saucier v. Hayes Dairy Products, 373 So.2d 102 (La.1979). In Saucier, the court pronounced limitations on the course an attorney may pursue to collect his fee after discharge by a client. Thereafter, in Scott v. Kemper Ins. Co., 377 So.2d 66 (La.1979), the court held that an attorney can neither force his continued representation on a client who wishes to discharge him nor may he obtain by any means a proprietary or ownership interest in the client’s claim. Therefore, it is clear that although parties are permitted to contract and/or agree with respect to attorney’s fees, that attorney’s fees and all contracts and agreements pertaining to such fees are subject to the review and control of the courts. Leenert’s Farms, Inc. v. Rogers, 421 So.2d 216 (La.1982); see also, City of Shreveport v. Standard Printing Company of Shreveport, Inc., 427 So.2d 1304 (La.App. 2d Cir.1983).
[[Image here]]
Therefore, without question, a trial on the merits is necessary to the resolution of this case.
We agree with the Watson court. Without making any findings whatsoever as to the merits of plaintiff’s action, we are of the opinion that the trial court erred in granting summary judgment for the aforesaid reasons.
Accordingly, the judgment of the trial court is reversed and the case remanded for further proceedings in accordance with this opinion. Costs of this appeal are assessed to defendants-appellees.
REVERSED AND REMANDED
KLIEBERT and WICKES, JJ., concur with written reasons.

. Conrad claims, in part, that the February 13th "contract” was controlling because the case was not settled until April 29th. We are not convinced that the document is a contract at all, but do not base our findings on that document.