639 So.2d 353 (1994)
Succession of Paul L. and Yvonne D. MIRAMON, Plaintiffs-Appellants,
v.
B.J. WOODS, et al., Defendant-Appellee.
No. 25850-CA.
Court of Appeal of Louisiana, Second Circuit.
June 22, 1994.
*355 Patricia N. Miramon, Shreveport, for appellants.
Dale G. Cox, Shreveport, for appellee.
Before SEXTON, LINDSAY and WILLIAMS, JJ.
LINDSAY, Judge.
The plaintiffs, Paul and Peter Miramon, appeal from a trial court ruling which granted a motion for summary judgment in favor of New England Insurance Company. For the following reasons, we reverse and remand the case to the trial court for further proceedings.

FACTS
Paul L. Miramon, Sr. died on December 15, 1984. His wife, Yvonne Miramon, died on April 28, 1985. Their only child, Paul Miramon, Jr. predeceased his parents. Mr. and Mrs. Miramon each left wills leaving their estates to their grandsons, Paul and Peter Miramon. The wills designated B.J. Woods as the attorney and administrator for the estates.
Woods opened the joint successions of the decedents on July 22, 1985, had the wills probated and was appointed administrator. Woods transferred cash assets into a succession account and paid the debts of the succession. Then, from July, 1985 to October, 1986, Woods converted the cash assets of the succession to his own use. The cash assets, which were originally in excess of $100,000, were depleted to less than $400 by late 1985. Woods took sums out of the succession account in increments and later claimed that he *356 "borrowed" the money to invest in companies that he operated. Peter and Paul Miramon were never asked for their permission to borrow the money from the succession account.
Upon discovering Woods' mishandling of the successions, the Miramon grandsons were successful in having him removed as the succession administrator. On November 13, 1986, the plaintiffs instituted the present proceeding and obtained a writ of attachment against Woods' immovable property. The plaintiffs alleged, not only that Woods misappropriated the succession assets, but also that he failed to pay income taxes and inheritance taxes, that he transferred immovable property to his corporations, that he entered the succession's safe deposit box and never made an inventory of the contents of the box, and that he failed to close the succession and preserve the succession assets. The plaintiffs sought to recover damages suffered by the failure of Woods to perform as a prudent administrator and to preserve the assets of the succession. They sought to recover not only the sums withdrawn from the succession account, but also lost interest, unpaid inheritance taxes, together with interest and penalties, and unpaid income taxes for the years 1983-1985, together with interest and penalties. On March 20, 1987, a supplemental and amending petition was filed, adding Wood's professional liability insurer, New England Insurance Company (New England), as a defendant in the suit, alleging that Woods had a policy of liability insurance with New England providing coverage for the aforementioned acts and omissions of Woods.
The plaintiffs also contacted the Caddo District Attorney's Office and local law enforcement officials. A criminal investigation was conducted and on December 3, 1986, Woods was charged by bill of information with felony theft in an amount over $500. On September 22, 1987, following a jury trial, Woods was convicted as charged. He was later sentenced to serve four years at hard labor. His conviction and sentence were affirmed by this court in an unpublished opinion. The Louisiana Supreme Court denied Woods' writ application on October 6, 1989.
On July 2, 1991, New England filed a motion for summary judgment. In its motion, New England denied coverage for the losses claimed by the Miramons. New England asserted that Woods' criminal conviction was now final and that the professional liability insurance policy issued to Woods, covering the period from October 1, 1985 to October 1, 1986, excludes coverage for any claim "that results in a final adjudication that the insured has committed a dishonest, fraudulent, or malicious act, error, omission, or personal injury with deliberate purpose and intent." New England contended that during the course of the criminal proceedings in this matter, Peter and Paul Miramon asserted that Woods committed a theft of money from their grandparents' successions, however, in this civil suit they seek to assert that Woods' conduct constituted negligence or a breach of a fiduciary duty. New England asserted that the doctrine of judicial estoppel should preclude the plaintiffs from asserting such a claim. Among the exhibits attached to New England's motion for summary judgment was the entire record of the criminal proceedings against Woods.
In opposition to the motion for summary judgment, the plaintiffs contended that even though Woods was convicted of felony theft, he was convicted of only one count of theft over $500, yet there were numerous withdrawals in which Woods obtained money from the succession account in excess of $500. Therefore, they argue that, in this civil case, there is a genuine issue of material fact as to whether each and every withdrawal constituted a criminal offense.
On November 18, 1992, the trial court entered judgment in favor of New England, granting the motion for summary judgment. Accordingly, the plaintiffs' claims against New England were dismissed, with prejudice.
In reasons for judgment, the trial court stated that the issue was whether New England had shown sufficiently that all of the takings by Woods were intentional in nature, bringing the claims of the plaintiffs within the policy exclusion. The court found that New England Insurance Company had shown that the theft by Woods of over $100,000 *357 establishes that, more probably than not, the taking of the funds belonging to the successions of the elder Miramons was intentional and without authority. Therefore, there was no genuine issue of material fact that all of the takings by Woods were criminal in nature and were excluded from coverage under the liability insurance policy.
The plaintiffs appealed. They contend that the trial court erred in allowing the transcript and record of Woods' criminal conviction into evidence in support of the motion for summary judgment. They argue that LSA-C.C.P. Art. 966 requires that a motion for summary judgment be decided on pleadings, affidavits, depositions, and admissions on file. They contend that oral testimony, including testimony at a prior hearing, should neither be received nor considered to decide a motion for summary judgment.
The plaintiffs further contend that the trial court erred in finding that New England proved that, for each and every withdrawal of funds and for each alleged act of negligence in handling the succession funds, there had been a "final adjudication," as required by the policy exclusion, that Woods committed a dishonest, fraudulent, or malicious act with deliberate purpose and intent, so as to justify New England's motion for summary judgment. Therefore, the plaintiffs claim that they should be allowed to proceed against the liability insurer.

ADMISSIBILITY OF CRIMINAL TRANSCRIPT ON MOTION FOR SUMMARY JUDGMENT
The plaintiffs contend that the trial court erred in allowing the record and transcript of Woods' criminal proceedings to be introduced as evidence in support of New England's motion for summary judgment. This argument has merit.
Motions for summary judgment are governed by LSA-C.C.P. Art. 966, et seq. The sole purpose of a motion for summary judgment is to determine in advance of trial whether a genuine issue of material fact exists between the litigants. A summary judgment is not a substitute for a trial on the merits. Leonard v. Stephens, 588 So.2d 1300 (La.App. 2d Cir.1991).
It is not the function of the trial court on a motion for summary judgment to determine or even inquire into the merits of the issues raised. The weighing of conflicting evidence on a material fact has no place in a summary judgment procedure. A motion for summary judgment is not appropriate for disposition of cases requiring a judicial determination of subjective facts, such as motive, intent, good faith, or knowledge. Watson v. Cook, 427 So.2d 1312 (La.App. 2d Cir.1983).
It is well-settled that testimony should neither be received nor considered, even with the consent of counsel, to decide a motion for summary judgment. Wattigny v. Lambert, 453 So.2d 1272 (La.App. 3d Cir. 1984); Urban Management Corporation v. Burns, 427 So.2d 1310 (La.App. 2d Cir.1983); Watson v. Cook, supra. In Wattigny v. Lambert, supra the court found that the trial court properly excluded testimony taken in a prior proceeding in considering a motion for summary judgment. The court stated that it is well-established that, in order for testimony taken at an earlier judicial proceeding to be admissible as evidence in a subsequent proceeding, there must exist an identity of parties, an identity of issues, and an opportunity for full cross examination.
Considering these legal principles, we find that the trial court erred in allowing the transcript of the criminal proceeding to be introduced and to be considered on the motion for summary judgment. The prior proceeding was criminal in nature, involving the prosecution of Woods by the state of Louisiana for the criminal offense of theft of property valued over $500. The parties in the criminal case were the state of Louisiana and Woods. The plaintiffs were not parties to that suit. Further, the issues in the prior proceeding involved criminal charges, whereas the issues in this case involve civil damages and coverage under a liability insurance policy. Also, the plaintiffs were not allowed to cross examine Woods in the criminal proceeding. Woods exercised his constitutional right against self-incrimination at the criminal trial and chose not to testify.
*358 We are not persuaded by New England's arguments that we should apply federal jurisprudence to this issue and that we should overturn jurisprudence in this state holding that testimony at prior proceedings, of the nature presented here, is not admissible in deciding a motion for summary judgment.
Therefore, we find that the trial court erred in considering the criminal proceeding against Woods in deciding this motion for summary judgment.

JUDICIAL ESTOPPEL
New England contends that the plaintiffs are barred by the doctrine of judicial estoppel from asserting that Woods lacked the requisite intent to misappropriate the funds of the succession. New England argues that the plaintiffs were instrumental in triggering the criminal prosecution of Woods and testified against him at trial, essentially stating that he intentionally committed the theft of the succession assets. New England argues that the plaintiffs are now barred from urging that any acts committed by Woods in handling this succession constituted negligence or a breach of fiduciary duty or were anything other than, "dishonest, fraudulent, or malicious acts, errors, or omissions, or personal injury with deliberate purpose and intent." This argument is meritless.
In contending that the doctrine of judicial estoppel is applicable to this case, New England cites a federal district court opinion defining that term as follows:
The doctrine of judicial estoppel precludes a party in a legal proceeding from asserting a position that is contrary to a position taken by that party in the same or prior proceeding. The doctrine is used to avoid damage to the integrity of the judicial process from the perception of inconsistent results. Thus, judicial estoppel applies only where the prior position was successfully maintained.
Zapata Gulf Marine Corporation v. Puerto Rico Maritime Shipping Authority, 731 F.Supp. 747 (E.D.La.1990).
Judicial estoppel is a variation of the common law concept of res judicata. Due to Louisiana's civilian heritage, the doctrine of res judicata in Louisiana law has traditionally been perceived to be much narrower in scope than its counterpart in common law jurisdictions. SJ v. PM, 586 So.2d 662 (La.App. 2d Cir.1991). With recent amendments to LSA-R.S. 13:4231 on res judicata, the concept of issue preclusion has been introduced into our law.[1] However, our jurisprudence continues to hold that judicial estoppel is not applicable in Louisiana. SJ v. PM, supra. See also State v. Smith, 571 So.2d 746 (La. App. 2d Cir.1990); Doyle v. State Farm Mutual Insurance Company, 414 So.2d 763 (La. 1982); Safeco Insurance Company of America v. Palermo, 436 So.2d 536 (La.1983); Dornak v. Lafayette General Hospital, 399 So.2d 168 (La.1981).
Further, the plaintiffs' action is not barred by res judicata under LSA-R.S. 13:4231. That article provides as follows:
Except as otherwise provided by law, a valid and final judgment is conclusive between the same parties, except on appeal or other direct review, to the following extent:
(1) If the judgment is in favor of the plaintiff, all causes of action existing at the time of final judgment arising out of the transaction or occurrence that is the subject matter of the litigation are extinguished and merged in the judgment.
(2) If the judgment is in favor of the defendant, all causes of action existing at the time of final judgment arising out of the transaction or occurrence that is the subject matter of the litigation are extinguished and the judgment bars a subsequent action on those causes of action.
(3) A judgment in favor of either the plaintiff or the defendant is conclusive, in any subsequent action between them, with respect to any issue actually litigated and determined if its determination was essential to the judgment.
Under the terms of this article, the plaintiffs' action in this case is not barred, because there has been no "valid and final judgment conclusive between the same parties."
*359 We also note, as did the plaintiffs, that under LSA-C.C.P. Art. 1005, estoppel is an affirmative defense that must be pled in the answer. In this case, the defendant did not plead estoppel in its answer, but raised the issue for the first time in the motion for summary judgment.
For the above stated reasons, we find that judicial estoppel is inapplicable to this case and does not operate as a bar to the plaintiff's suit.

SUMMARY JUDGMENT
LSA-C.C.P. Art 966 provides, in pertinent part, that a motion for summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the mover is entitled to judgment as a matter of law.
Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith. The court may permit affidavits to be supplemental or opposed by depositions, answers to interrogatories, or by further affidavits. LSA-C.C.P. Art. 967.
A fact is material if its existence or nonexistence may be essential to the plaintiff's cause of action under the applicable theory of recovery. Facts are "material" if they potentially insure or preclude recovery, affect the litigant's ultimate success or determine the outcome of a legal dispute. Security National Trust v. Kalmback, 613 So.2d 664 (La.App. 2d Cir.1993); Bradford v. Louisiana Downs, Inc., 606 So.2d 1370 (La.App. 2d Cir.1992); Swindle v. Haughton Wood Company, Inc., 458 So.2d 992 (La.App. 2d Cir.1984).
The mover has the burden of affirmatively showing the absence of a genuine issue of material fact and any doubt on this score should be resolved against granting the motion. Langley v. Oxford Chemicals, Inc., 559 So.2d 520 (La.App. 2d Cir.1990); Bradford v. Louisiana Downs, Inc., supra.
When a motion for summary judgment is made and supported, an adverse party may not rest on the mere allegations or denials of his pleadings, but his response, by affidavits or otherwise, must set forth specific facts showing that there is a genuine issue for trial. LSA-C.C.P. Art. 967. In effect, after the mover files sufficient documentation to support the motion for summary judgment, the burden shifts to the opponent to prove material facts are at issue. Langley v. Oxford Chemicals, supra.
Papers supporting the mover's position are to be closely scrutinized, while the opposing party's are to be indulgently treated, in determining whether the mover has satisfied his burden of proof. Vermilion Corporation v. Vaughn, 397 So.2d 490 (La. 1981).
When the court is presented with a choice of reasonable inferences to be drawn from subsidiary facts contained in affidavits and attached exhibits, reasonable inferences must be viewed in the light most favorable to the party opposing the motion. Broom v. Leebron & Robinson Rent A Car, Inc., 626 So.2d 1212 (La.App. 2d Cir.1993).
The credibility of witnesses or doubt as to whether a party alleging a fact will be able to sustain his burden of proof on the merits are improper considerations in determining the existence of material fact. Smith v. Our Lady of the Lake Hospital, Inc., 624 So.2d 1239 (La.App. 1st Cir.1993). The party who defends against a motion for summary judgment must have his properly filed allegations taken as true and must receive the benefit of the doubt when his assertions conflict with those of the movant. Schroeder v. Board of Supervisors of Louisiana State University, 591 So.2d 342 (La. 1991).
On a motion for summary judgment, the court must first determine whether the supporting documents presented by the moving party are sufficient to resolve all material factual issues. Security National Trust v. Kalmback, supra. All doubts must be resolved *360 in favor of trial on the merits even if grave doubt exists as to a party's ability to establish disputed facts at trial. Richoux v. Tulane Medical Center, 617 So.2d 13 (La. App. 4th Cir.1993).
Appellate courts review summary judgments de novo under the same criteria that govern the district court's consideration of whether summary judgment is appropriate. McNeer Electrical Contracting, Inc. v. CRL, Inc., 621 So.2d 99 (La.App. 2d Cir. 1993).

Discussion
Upon examining the record in this case according to the principles governing motions for summary judgment, we find that the trial court erred in granting New England's motion.
As the plaintiffs correctly state, Woods was convicted of only one count of theft of property valued over $500. The criminal adjudication did not find that each and every withdrawal made from the succession account constituted theft. Therefore, without an adjudication regarding each instance in which funds were withdrawn from the succession account, New England has failed to show that the exclusionary clause in the liability insurance policy clearly applies and operates in this case to bar recovery by the plaintiffs. Under these facts, the trial court's finding that Woods was convicted of theft over $100,000 is inaccurate.
We also note that the trial court stated that the theft by Woods of over $100,000 established that the taking of the funds belonging to the successions of the Miramons "more probably than not" was "intentional and without authority." This statement by the trial court demonstrates that it made a decision regarding Woods' intent. As stated above, a motion for summary judgment is not appropriate for the disposition of cases requiring a judicial determination of subjective facts such as motive or intent. Watson v. Cook, supra.
Further, this statement by the trial court demonstrates that the wrong standard was applied in determining whether to grant the motion for summary judgment. The trial court found that "more probably than not" the acts of Woods fell under the exclusionary clause of the insurance policy. However, to satisfy his burden, the mover must meet a strict standard by showing that it is quite clear what the truth is, and that it excludes any real doubt as to the existence of any genuine issue of fact. Rhines v. Carpenter, 465 So.2d 884 (La.App. 2d Cir.1985); Bradford v. Louisiana Downs, Inc., supra.
We further note that the plaintiffs alleged other acts of negligence and breach of fiduciary duty against Woods, in addition to their claims concerning the withdrawal of succession funds. The plaintiffs alleged improper transfer of immovable property belonging to the succession, as well as failure to pay income and inheritance taxes, entering the succession safe deposit box and failing to make an inventory of its contents and failing to close the succession and failing to preserve the succession assets. These allegations bear directly on the issue of whether Woods was negligent in handling the succession. These issues were not in any way included in the criminal prosecution against Woods. Therefore, as to these allegations, there has been no final adjudication that these actions were the result of a "dishonest, fraudulent, or malicious act, error, omission, or personal injury with deliberate purpose and intent."
Genuine issues of fact remain as to the manner in which Woods handled the succession. Genuine issues of fact also remain as to whether the policy of liability insurance covers the losses caused by Woods' actions which may be shown at the trial of this case.

CONCLUSION
For the reasons stated above, we find that the trial court erred in granting summary judgment in favor of the defendant, New England Insurance Company. The trial court judgment is reversed and the matter is remanded to the trial court for further proceedings. Final assessment of costs is to await the outcome of the proceedings.
REVERSED AND REMANDED.
NOTES
[1] LSA-R.S. 13:4231 was amended by Acts 1990, No. 521, § 1, effective January 1, 1991.